UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DARRICK BAILEY,

                    Plaintiff,                          Case No. 2:23-cv-83

v.                                                      Honorable Maarten Vermaat

UNKNOWN HILL, SR. et al.,

                    Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff

paid the full $402.00 filing fee for this action. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the

Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under

the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.5.)

This case is presently before the Court for preliminary review under the Prison Litigation

Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C.

§ 1915A(b) and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to

the service of the complaint. *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134

(6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the

complaint on the named defendant(s) is of particular significance in defining a putative defendant's

relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless

notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v.*

*Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding

tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way that they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Unknown Parties. The Court will also dismiss Plaintiff's federal claims against Defendants Hill, Jr., Brennan, and Fielding for failure to state a claim. The Court will dismiss Plaintiff's state law claims against Defendants Hill, Jr., Brennan, and Fielding without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

The Court will also dismiss the following claims against the remaining Defendants for failure to state a claim: (1) Plaintiff's official capacity claims; (2) Plaintiff's Eighth Amendment claims against Defendants Seymour and Boyak premised upon their failure to take disciplinary action against Defendant Hill, Sr.; (3) Plaintiff's Eighth Amendment deliberate indifference to medical care claim against Defendant Seymour; and (4) Plaintiff's Fourteenth Amendment

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

procedural due process claims against Defendants Seymour and Boyak. The following claims remain in the case: (1) Plaintiff's First Amendment retaliation claims against Defendants Seymour and Boyak; (2) Plaintiff's Eighth Amendment excessive force claim against Defendant Hill, Sr.; and (3) Plaintiff's state law claims against Defendants Hill, Sr., and Seymour. The Court will also deny Plaintiff's motion to appoint counsel (ECF No. 2).

**Discussion**

## I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Sergeants Unknown Seymour and Unknown Boyak, as well as Corrections Officers Unknown Hill, Sr., Unknown Hill, Jr., Unknown Brennan, and Unknown Fielding. Plaintiff also sues Unknown Parties, referred to as "all staff involved." (ECF No. 1, PageID.3.) Plaintiff sues Defendants in both their official and personal capacities.

Plaintiff alleges that during the relevant time, he was assigned to assist a handicapped prisoner by picking up and returning that prisoner's food trays. (*Id.*, PageID.9.) On May 25, 2020, Plaintiff picked up the "detail trays that he needed to deliver." (*Id.*, PageID.10.) While Plaintiff was giving a tray to inmate Taylor, Defendant Hill, Sr., who was in the control center, shut the cell door on the tray, causing injury to Plaintiff's wrist. (*Id.*) Plaintiff tried to explain that his job detail involved getting inmate Taylor's food trays for him. (*Id.*) Defendant Hill, Sr., responded, "That's what you dummies get for passing food. Go to your cell or go to the hole." (*Id.*) Plaintiff again tried to explain that he was only doing his job. (*Id.*) Defendant Hill, Sr., threatened to place Plaintiff "in the hole if he did not lock down." (*Id.*) Plaintiff submitted grievances about the incident. (*Id.*)

While Plaintiff was waiting to be interviewed regarding his grievances, he asked numerous correctional officers for medical attention, but his requests were denied. (*Id.*, PageID.11.) Plaintiff alleges that he was in severe pain, but Defendants Hill, Jr., Brennan, and Fielding denied his requests for medical care. (*Id.*) Plaintiff submitted a healthcare kite on May 29, 2020.[2] (*Id.*) He alleges that he was denied medical treatment, so he submitted a grievance. (*Id.*)

On June 3, 2020, Defendant Seymour interviewed Plaintiff regarding his grievance against Defendant Hill, Sr. (*Id.*, PageID.4.) Defendant Seymour told Plaintiff that he would get Plaintiff medical attention that day if Plaintiff signed off on his grievance. (*Id.*, PageID.13.) Plaintiff agreed, and Defendant Seymour called healthcare and spoke to Nurse Crane (not a party). (*Id.*, PageID.3.) Nurse Crane examined Plaintiff's wrist and gave him pain medication. (*Id.*) Plaintiff was also sent to the Munising Memorial Hospital for X-rays. (*Id.*, PageID.13.) Dr. Todd Bostwick (not a party) noted that Plaintiff's X-rays showed an "ulna positive variance which can predispose to TCFF tears." (ECF No. 1-2, PageID.40.) When Plaintiff returned to LMF, medical staff gave him a wrist brace "due to the findings of the hospital." (ECF No. 1, PageID.14.)

On June 5, 2020, Defendant Seymour came to see Plaintiff to check if Plaintiff intended to sign off on his grievances. (*Id.*, PageID.4.) Plaintiff responded that he "[would] not be bribed and he [would] not sign off on the grievance because Defendant Officer Hill Sr. assaulted him and [Defendant Seymour was] covering up" that act. (*Id.*, PageID.14.) Defendant Seymour "got upset and told [Plaintiff] to lock down immediately." (*Id.*)

---

[2] Plaintiff writes that he submitted this kite on May 29, 2022. However, Plaintiff's exhibits and the rest of his allegations suggest that the events of which Plaintiff complains occurred in 2020. The Court, therefore, considers Plaintiff's reference to 2022 to be a typographical error.

Several days later, on June 11, 2020, Defendant Seymour wrote a class II misconduct ticket, charging Plaintiff with interference with the administration of rules. (ECF No. 1-3, PageID.43.) In support of the charge, Defendant Seymour wrote:

> Due to the allegations made against C/O K. Hill in the grievance filed by prisoner Bailey, C/O K. Hill could have been subject to discipline leading up to the dismissal of his job. I received a grievance from prisoner Bailey on 6-3-20 stating that C/O K. Hill maliciously assaulted him while on work assignment, by closing the cell door on his left wrist. Prisoner Bailey made written false accusations resulting in attempting disciplinary action against C/O K. Hill. I reviewed institutional camera and the video clearly shows that when the door was closed that prisoner Bailey's wrist was not closed in the door. Prisoner Bailey['s] allegations against C/O K. Hill were clearly false.

(*Id.*) Defendant Boyak reviewed the misconduct with Plaintiff that same day. (*Id.*, PageID.44.) Plaintiff alleges that the misconduct ticket was false and retaliatory because Plaintiff refused to sign off on his grievance. (ECF No. 1, PageD.14–15.) Plaintiff states that on June 15, 2020, Defendant Boyak re-reviewed the ticket, and Plaintiff "received 20 days in [his] cell with a wrist brace on." (*Id.*, PageID.4.)

Based on the foregoing, Plaintiff asserts the following claims for relief: (1) an Eighth Amendment excessive force claim against Defendant Hill, Sr.; (2) Eighth Amendment deliberate indifference claims against Defendants Hill, Jr., Brennan, and Fielding for denying Plaintiff's requests for medical attention; (3) Eighth Amendment deliberate indifference claims against Defendants Seymour and Boyak for failing to act and take disciplinary measures against Defendant Hill, Sr.; (4) an Eighth Amendment claim against Defendant Seymour for failing to provide medical attention unless Plaintiff signed off on his grievance; (5) state law negligence claims against Defendants Hill, Jr., Brennan, and Fielding; (6) a state law assault and battery claim against Defendant Hill, Sr.; and (7) a state law bribery claim against Defendant Seymour. (*Id.*, PageID.17– 25.) The Court also construes Plaintiff's complaint to assert First Amendment retaliation claims against Defendants Seymour and Boyak for the issuance of the alleged false misconduct ticket,

and a Fourteenth Amendment procedural due process claim against Defendants Seymour and Boyak regarding the alleged false ticket.

Plaintiff seeks declaratory relief. (*Id.*, PageID.26.) He also seeks injunctive relief in the form of an order directing that: (1) all Defendants be monitored and made to complete probationary periods as corrections officers; (2) Defendant Hill, Sr., "seek mental health services to observe his competence to continue to be a correction[s] officer"; and (3) Defendant Hill, Sr., "complete anger management before he can be around any other prisoners." (*Id.*, PageID.27.) Plaintiff also seeks compensatory and punitive damages. (*Id.*, PageID.28–29.)

## II.    Motion to Appoint Counsel

As noted *supra*, Plaintiff has filed a motion to appoint counsel to represent him in this matter. (ECF No. 2.) Plaintiff asserts that counsel should be appointed because "cases involving staff assaults are and can be difficult, since the facts are almost always disputed and there are seldom any witnesses." (*Id.*, PageID.45.) Plaintiff avers that he is in a "segregation unit and has extremely limited access to a law library." (*Id.*)

Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear

necessary to the proper presentation of Plaintiff's position. The Court, therefore, will deny Plaintiff's motion to appoint counsel (ECF No. 2).

### III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

8

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Official Capacity Claims

As noted *supra*, Plaintiff sues Defendants in both their official and personal capacities. Although an action against a defendant in his or her individual capacity intends to impose liability on the specified individual, an action against the same defendant in his or her official capacity intends to impose liability only on the entity that they represent. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Plaintiff seeks declaratory and injunctive relief, as well as damages. Official capacity defendants, however, are absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). The Court, therefore, will dismiss Plaintiff's damages claims against Defendants in their official capacities.

An official capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Graham*, 473 U.S. at 167 n.14. Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Importantly, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Underlying this rule is the premise that injunctive relief is appropriate only where plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *id.*; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Plaintiff's complaint, however, is devoid of facts suggesting that any of the named Defendants are engaged

in ongoing violations of federal law. Instead, Plaintiff's allegations concern events that occurred in 2020. Plaintiff, therefore, cannot maintain his official capacity claims for declaratory and injunctive relief against Defendants, and such claims will be dismissed.

### B. Individual Capacity Claims

#### 1. Claims Against Unknown Parties

Plaintiff has sued Unknown Parties, referred to as "all staff involved." (ECF No. 1, PageID.3.) Plaintiff's complaint, however, is devoid of any factual allegations against the Unknown Parties. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events

leading to his injuries."). Plaintiff fails to even mention the Unknown Parties in the body of his complaint. His allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). All claims against Unknown Parties, therefore, are properly dismissed.

### 2. First Amendment Retaliation Claims

The Court has construed Plaintiff's complaint to assert First Amendment retaliation claims against Defendants Seymour and Boyak for the issuance of the alleged false misconduct ticket. Plaintiff suggests that the issuance of the ticket was retaliatory because Plaintiff refused to sign off on his grievance against Defendant Hill, Sr.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). However, the right to file grievances is protected only insofar as the grievances are not "frivolous." *Herron*, 203 F.3d at 415. "Abusive or manipulative use of a grievance system would not be protected conduct," *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012), and an "inmate cannot immunize himself from adverse

administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory," *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002).

Here, Plaintiff filed a grievance against Defendant Hill, Sr., alleging that Defendant Hill, Sr., shut Plaintiff's wrist in inmate Taylor's cell door when Plaintiff was performing his job duties. He subsequently received a class II misconduct for interference with the administration of rules. That charge proscribes "[a]cts intending to impede, disrupt, or mislead the disciplinary process for staff or prisoners." *See* MDOC Policy Directive 03.03.105, Attach. B (eff. July 1, 2018). If this charge is "written as a result of a grievance, it must be shown that [the] prisoner knew [the] allegation was false when s/he made it and intentionally filed a false grievance." *Id.* Evidence of falsity might, for example, be taken from video of the incident that prompted the grievance. *See, e.g.*, *Hunter v. Palmer*, No. 1:17-cv-109, 2019 WL 8112492, at *4 (W.D. Mich. Nov. 26, 2019); *Medlock v. Trierweiler*, No. 1:18-cv-785, 2020 WL 2576157, at *5 (W.D. Mich. Mar. 9, 2020). Plaintiff's allegations do not establish that Plaintiff's grievance against Defendant Hill, Sr., violated the regulation, and any determination by the MDOC that it did does not have preclusive effect.[3] Plaintiff, therefore, has adequately alleged protected conduct.

---

[3] In *Maben*, 887 F.3d at 252, the Sixth Circuit clarified the limits of the preclusion doctrine with respect to facts determined at a prison hearing as follows:

> To determine whether we must give preclusive effect to "factfinding from Michigan prison hearings," we look to four requirements, all of which must be met: (1) the state agency "act[ed] in a 'judicial capacity'"; (2) the hearing officer "resolved a disputed issue of fact that was properly before it"; (3) the prisoner "had an adequate opportunity to litigate the factual dispute"; and, (4) if these other three requirements are met, we must "give the agency's finding of fact the same preclusive effect it would be given in state courts." *Peterson v. Johnson*, 714 F.3d 905, 911–13 (6th Cir. 2013) (internal citation and quotation marks omitted).

*Maben*, 887 F.3d at 259. The *Maben* court expressly rejected the application of *Peterson* preclusion to minor misconduct proceedings in Michigan, both because the state agency was not acting in a

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). The Sixth Circuit has concluded that the threat and imposition of sanctions for a class II misconduct constitutes adverse action. *See Maben*, 887 F.3d at 266–67. Here, Plaintiff suggests that he ultimately received "20 days in [his] cell" as a result of the misconduct. (ECF No. 1, PageID.4.) Plaintiff, therefore, has adequately alleged adverse action.

Finally, Plaintiff must allege that the adverse action was motivated by the protected conduct. Here, Plaintiff alleges that when he told Defendant Seymour that he would not be signing off on his grievance, Defendant Seymour "got upset and told [Plaintiff] to lock down immediately." (ECF No. 1, PageID.14.) A few days later, Plaintiff received the class II misconduct charging him with interference with the administration of rules. On June 15, 2020, Defendant Boyak re-reviewed the ticket, and Plaintiff received 20 days in his cell. (*Id.*, PageID.4.) Given these allegations, at this stage of the proceedings, Plaintiff has sufficiently stated First Amendment retaliation claims against Defendants Seymour and Boyak.

### 3.    Eighth Amendment Claims

Plaintiff contends that several of the Defendants violated his Eighth Amendment rights in various ways. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it

---

judicial capacity and because the prisoner in such proceedings does not have an adequate opportunity to litigate the factual dispute. *Id.* at 261.

contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate

health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### a.      Excessive Force

Plaintiff contends that Defendant Hill, Sr., violated his Eighth Amendment rights by slamming prisoner Taylor's cell door on Plaintiff's wrist. (ECF No. 1, PageID.10.) Plaintiff alleges that he tried to tell Defendant Hill, Sr., that he was just doing his assigned job, but that Defendant Hill, Sr., responded, "That's what you dummies get for passing food. Go to your cell or go to the hole." (*Id.*) Plaintiff's claim must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley v. Albers*, 475 U.S. 312, 321–22 (1986).

Not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson*, 503 U.S. at 9 (holding that "[n]ot every push or shove...violates a prisoner's constitutional rights" (internal quotation marks omitted)). On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir.

2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 F. App'x. 579, 582 (6th Cir. 2011). Given Plaintiff's allegations against Defendant Hill, Sr., the Court concludes that Plaintiff has set forth a plausible Eighth Amendment excessive force claim against him.

### b.    Supervision of and Failure to Discipline Defendant Hill, Sr.

Plaintiff contends that Defendants Seymour and Boyak violated his Eighth Amendment rights by failing to take disciplinary action against Defendant Hill, Sr., after he used excessive force against Plaintiff. (ECF No. 1, PageID.18.)

Essentially, Plaintiff seeks to hold Defendants Seymour and Boyak liable for Eighth Amendment violations premised upon their respective supervisory positions. Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *see also Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff's complaint is devoid of facts from which the Court could infer that Defendants Seymour and Boyak encouraged or condoned Defendant Hill, Sr.'s, conduct, or authorized, approved, or knowingly acquiesced in that conduct. Rather, Plaintiff suggests only that Defendants Seymour and Boyak failed to supervise Defendant Hill, Sr., and failed to take disciplinary action against him after the fact, which is insufficient to impose § 1983 liability. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899. Plaintiff's conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants Seymour and Boyak were personally involved in the alleged use of excessive force by Defendant Hill, Sr. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. The Court, therefore, will dismiss Plaintiff's Eighth Amendment claims against Defendants Seymour and Boyak premised upon their failure to discipline Defendant Hill, Sr., after the alleged use of force.

### c.    Medical Care

Plaintiff contends that Defendants Hill, Jr., Brennan, and Fielding violated his Eighth Amendment rights by denying Plaintiff's requests for medical attention after the use of force. (ECF

No. 1, PageID.17–18.) Plaintiff also suggests that Defendant Seymour was deliberately indifferent to Plaintiff's medical needs by failing to provide medical attention unless Plaintiff agreed to sign off on his grievance against Defendant Hill, Sr. (*Id.*, PageID.19.)

"The Supreme Court has long recognized that the government has a constitutional obligation to provide medical care to those whom it detains." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Rhinehart v. Scutt*, 894 F.3d 721, 736–37 (6th Cir. 2018); *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Deliberate indifference may be manifested by a medical professional's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

An Eighth Amendment claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore*, 390 F.3d at 899; *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390

F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The Eighth Amendment's subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart*, 894 F.3d at 738 (quoting *Farmer*, 511 U.S. at 842).

Plaintiff's allegations are simply too conclusory to state Eighth Amendment claims for the denial of medical treatment against Defendants Hill, Jr., Brennan, and Fielding. Plaintiff only sets forth that Defendants Hill, Jr., Brennan, and Fielding denied Plaintiff's requests to see the healthcare department. (ECF No. 1, PageID.11.) Plaintiff does not indicate what symptoms he described to these Defendants, and he does not suggest what treatment he required. Additionally, Plaintiff does not suggest any consequences of not receiving treatment prior to when he eventually did. It is "difficult to infer a serious medical need from the facts" as alleged by Plaintiff. *See Larkin v. Schroeder*, No. 2:20-cv-111, 2020 WL 4344985, at *5 (W.D. Mich. July 29, 2020). Plaintiff's allegations are too conclusory to show sufficiently serious medical conditions that were "so obvious that even a layperson would easily recognize the necessity for a doctor's attention."

*Blackmore*, 390 F.3d at 899–900. Furthermore, nothing in Plaintiff's complaint suggests that Defendants Hill, Jr., Brennan, and Fielding were aware of any need for treatment. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679. There is nothing alleged in the complaint that might distinguish a deliberate indifference to Plaintiff's needs from simple negligence, which *Farmer* has held is not enough for an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence"). The Court, therefore, will dismiss Plaintiff's Eighth Amendment claims against Defendants Hill, Jr., Brennan, and Fielding.

Plaintiff also faults Defendant Seymour for violating his Eighth Amendment rights by conditioning Plaintiff's receipt of medical treatment on Plaintiff agreeing to sign off on his grievance against Defendant Hill, Sr. (ECF No. 1, PageID.19.) Plaintiff's allegations, however, make clear that he agreed to sign off on the grievance only so that he could see healthcare, and that Defendant Seymour immediately contacted the healthcare department afterwards. (*Id.*, PageID.4.) Plaintiff saw Nurse Crane, who provided pain medications. (*Id.*) Plaintiff was also taken to the hospital for X-rays of his wrist. (*Id.*, PageID.4, 13–14.) Plaintiff's complaint is devoid of any allegations from which the Court could infer any deliberate indifference exhibited by Defendant Seymour. Defendant Seymour upheld his end of his bargain with Plaintiff and obtained healthcare services for Plaintiff that same day. Accordingly, Plaintiff's Eighth Amendment claim against Defendant Seymour premised upon deliberate indifference to Plaintiff's medical needs will be dismissed.[4]

---

[4] Although Plaintiff has not set forth an Eighth Amendment deliberate indifference claim against Defendant Seymour, any threat by Defendant Seymour to withhold medical treatment unless

### 4.      Fourteenth Amendment Procedural Due Process Claim

The Court has construed Plaintiff's complaint to assert a Fourteenth Amendment procedural due process claim against Defendants Seymour and Boyak premised upon the issuance of the alleged false misconduct. A prisoner's ability to challenge a prison misconduct conviction depends on whether the conviction implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).

Plaintiff references receiving a class II misconduct for interference with the administration of rules. Under MDOC Policy Directive 03.03.105, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. *See* MDOC Policy Directive 03.03.105 ¶ B (eff. July 1, 2018). Minor misconducts are ones for which inmates cannot be denied good time or disciplinary credits. *See id.* ¶ AAAA. The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g.*, *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003). Plaintiff, therefore, cannot maintain procedural due process claims against Defendants Seymour and Boyak premised upon the issuance of the class II misconduct ticket, and such claims will be dismissed.

---

Plaintiff agreed to sign off on his grievance is properly addressed *infra* in Part III.B.2, which addresses Plaintiff's First Amendment retaliation claims.

### C.    State Law Claims

Plaintiff also asserts state law negligence claims against Defendants Hill, Jr., Brennan, and Fielding; a state law assault and battery claim against Defendant Hill, Sr.; and a state law bribery claim against Defendant Seymour. (ECF No. 1, PageID.19–22.) Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for violations of state law. *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995).

In determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Because the Court has dismissed Plaintiff's federal claims against Defendants Hill, Jr., Brennan, and Fielding, the Court will decline to exercise supplemental jurisdiction over Plaintiff's negligence claims against those Defendants. Those claims will be dismissed without prejudice to Plaintiff's ability to bring those claims in state court. Because Plaintiff continues to have pending federal claims against Defendants Hill, Sr., and Seymour, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims against them.

## Conclusion

For the reasons stated above, the Court will deny Plaintiff's motion to appoint counsel (ECF No. 2). Further, having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint against Defendants Unknown Parties will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss Plaintiff's federal claims against Defendants Hill, Jr., Brennan, and Fielding for failure to state a claim. The Court will dismiss Plaintiff's state law claims against Defendants Hill, Jr., Brennan, and Fielding without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

The Court will also dismiss the following claims against the remaining Defendants for failure to state a claim: (1) Plaintiff's official capacity claims; (2) Plaintiff's Eighth Amendment claims against Defendants Seymour and Boyak premised upon their failure to take disciplinary action against Defendant Hill, Sr.; (3) Plaintiff's Eighth Amendment deliberate indifference to medical care claim against Defendant Seymour; and (4) Plaintiff's Fourteenth Amendment procedural due process claims against Defendants Seymour and Boyak. The following claims remain in the case: (1) Plaintiff's First Amendment retaliation claims against Defendants Seymour and Boyak; (2) Plaintiff's Eighth Amendment excessive force claim against Defendant Hill, Sr.; and (3) Plaintiff's state law claims against Defendants Hill, Sr., and Seymour.

An order consistent with this opinion will be entered.

Dated:   May 26, 2023                                              /s/ *Maarten Vermaat*
                                                                   Maarten Vermaat
                                                                   United States Magistrate Judge